UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
INES CABRERA *on behalf of herself,*
*individually, and on behalf of all others*
*similarly-situated,*

                          Plaintiffs,           **ORDER**

        -against-                  16-CV-3234 (ADS) (SIL)

CHRISTOPHER STEPHENS,
doing business as 7-Eleven;
ATTAULLAH KHAN,

                       Defendants.
------------------------------------------------------------------------x

**LOCKE, Magistrate Judge:**

      Plaintiff Ines Cabrera ("Cabrera") commenced this action against Defendants Christopher Stephens ("Stephens"), doing business as 7-Eleven and Attaullah Khan ("Khan") (collectively, "Defendants"), on behalf of herself and all other similarly situated individuals (collectively "Plaintiffs"), seeking to recover unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 190, *et seq. See* Complaint ("Compl."), Docket Entry ("DE") [1].[1] Presently before the Court, on referral from the Honorable Arthur D. Spatt, is Plaintiffs' motion for an order conditionally certifying this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b), authorizing dissemination of a proposed notice and consent to sue form (the "Notice and Consent Form") to potential opt-in plaintiffs, and providing other related

---

[1] On November 7, 2016, Plaintiffs filed a consent to join the collective action signed by Ivan Sinchi. *See* DE [16].  On June 2, 2017, Erika de Leon also joined as an opt-in party.  *See* DE [37].

relief ("Motion for Conditional Certification").  *See* Plaintiffs' Motion for Conditional Certification ("Pl. Cert. Mot."), DE [22].  Defendants oppose conditional certification as well as certain aspects of the proposed Notice and Consent Form.  *See* Defendants' Opposition to Conditional Certification ("Def. Cert. Opp."), DE [25].

While the Motion for Conditional Certification was pending, Plaintiffs filed a letter motion to strike ("Motion to Strike") the affidavits submitted with Defendants' opposition to the Motion for Conditional Certification and Defendants' opposition to a separate motion to compel.  *See* Plaintiffs' Motion to Strike ("Pl. Strike Mot."), DE [31].  The Motion to Strike, which Defendants opposed, is also presently before the Court on referral from Judge Arthur D. Spatt.  *See* Defendants' Opposition to Plaintiffs' Motion to Strike ("Def. Strike Opp."), DE [33-35].  The Court conducted an evidentiary hearing on the Motion to Strike with respect to whether any of the affidavits or declarations at issue were obtained in bad faith through coercion or misrepresentations.  *See* DE [38-40].  For the reasons set forth herein, Plaintiffs' motion for conditional certification is granted in part and denied in part, and Plaintiffs' motion to strike is denied.

I.     **BACKGROUND**

A. **Summary of Relevant Facts**

Defendant Stephens owns and operates several 7-Eleven convenience stores on Long Island and employs a staff of non-managerial hourly employees, such as assistant managers, cashiers, and store clerks.  Compl. ¶¶ 28-32; Declaration of Ines Cabrera ("Cabrera Decl."), DE [22-5], ¶¶ 1-3; Declaration of Ivan Sinchi ("Sinchi

Decl."), DE [22-6], ¶¶ 1-3.  One of Defendants' principal places of business is 653 Montauk Highway, Montauk, Suffolk County, New York ("Montauk Store"), and, with respect to this store, Stephens and Khan make all of the managerial and employment decisions regarding the hourly employees.  *See* Compl. ¶¶ 28-30; Cabrera Decl. ¶¶ 1-2; Sinchi Decl. ¶¶ 1-2.  According to Cabrera, Defendants other 7-Eleven stores are located in East Patchogue and Smithtown.  Declaration of Muhammad Anwar, ("Anwar Decl."), DE [22-11], ¶ 9.

From approximately October 1, 2010 until October 24, 2013, Cabrera worked as an assistant manager at Defendants' Montauk Store.  Compl. ¶ 31; Cabrera Decl. ¶ 1.  Cabrera was required to clock in and out at the start and end of each shift; however, it is alleged that Defendants routinely altered Cabrera's timesheets in order to make it appear that Cabrera worked fewer hours.  Compl. ¶¶ 2, 43-5; Cabrera Decl. ¶¶ 5-7.  The purpose of these reductions was to maintain an ideal sales-to-salary ratio, presumably to ensure a certain level of profitability.  *See* Anwar Decl. ¶¶ 8-9. As a result, Defendants are alleged to have failed to pay Cabrera for all of her hours worked in compliance with the federally mandated minimum wage.  Pl. Cert Mot. at 4-5.  Additionally, it is alleged that Defendants failed to pay Cabrera the mandated overtime premium for any hours that she worked over forty per week.  Cabrera Decl. ¶¶ 4-6.

According to Plaintiffs, other employees were similarly underpaid.  Cabrera Decl. ¶¶ 7-11; Anwar Decl. ¶ 10; Sinchi Decl. ¶¶ 3-10.  Opt-in Plaintiff Ivan Sinchi ("Sinchi") claims to have worked for Defendants as an assistant manager and store

clerk at the Montauk Store from April 2010 through October 2013 during which time he alleges that Defendants also altered his timesheets, refused to pay him for all hours worked, and denied him overtime at the statutory rate.  Sinchi Decl. ¶¶ 1-7. Cabrera and Sinchi claim that approximately thirteen other named employees at the Defendants' Montauk Store were all similarly mistreated.  Cabrera Decl. ¶ 10, Sinchi Decl. ¶ 9.  Muhammad Anwar previously brought suit against Defendants under the FLSA and NYLL, raising similar allegations, which settled.  *See Anwar v. Stephens et al.*, 2:15-cv-04493., ECF # 27 (Feb. 2, 2017).

Plaintiffs also contend that the wage violations carried out at the Montauk Store, occurred at Defendants' other locations.  In support, Plaintiffs cite to Khan's confirmation that the same scheme to reduce pay to maintain a certain salary-to-sales ratio was applied to all of Defendants' employees regardless of their location. *See id.* ¶¶ 7-9 ("Khan instructed [Anwar] to reduce virtually every employees' hours to avoid paying them overtime for their hours worked over forty…pay was limited based on a uniform policy that applied to all of Defendants' employees.").

### B. <u>Present Motions</u>

#### 1.  Plaintiffs' Motion for Conditional Certification

Plaintiffs argue that they have satisfied the low evidentiary burden applicable to conditional certification of a collective action under the FLSA by submitting declarations identifying putative opt-in plaintiffs and substantiating a factual nexus between the wage violations that Plaintiffs allegedly suffered and those potentially suffered by other similarly situated employees.  *See* Pl. Cert. Mot. at 11-13.   The

affidavits of Cabrera and Sinchi provide the names of specific individuals who are alleged to be similarly situated potential opt-in plaintiffs: Jorge Alvarez, Muhammed Anwar, Luz Guanga, Maria Guanga, Ximena Jarrin, Rodrigo Taturi, "Ali," "Dorine," "Erika," "Ibrahim," "Jarira," "Marva," and "Patricia" (collectively, "Opt-In Plaintiffs"). *See id.* Further, Plaintiffs seek notice to be sent to all current and former employees who worked for Defendants at all locations owned and operated by Stephens, not simply the Montauk Store at which Cabrera and Sinchi worked, and that the notice should be sent to all individuals who were employed during the last six years in light of the NYLL violations alleged in the Complaint. *See id.* at 14-16. They seek to distribute notice and reminder notices by electronic and traditional means, in Spanish and English, and by posting them at each of Defendants' stores. *See id.* at 17-21. Finally, Plaintiffs petition the Court to toll the FLSA statute of limitations from the date of the filing of the Complaint until the deadline that the Court grants certification. *See id.* at 22-23.

Defendants oppose arguing that Plaintiffs cannot show an unlawful common policy because they have only submitted sworn statements of two employees that are primarily composed of boilerplate conclusory language. *See* Def. Cert. Opp. at 4-5. Additionally, any allegations contained in those statements concerning other employees are anecdotal, inadmissible hearsay. *See id.* Defendants further assert that Cabrera's own overtime claim is contradicted by the paystub that she provided, which shows that she was compensated at the applicable overtime rate in that instance. *See id.*

Were the Court to grant certification, Defendants argue that notice should be limited to the Montauk Store as Plaintiffs have failed to make any factual allegations related to any other named employee at another location, and as each of the 7-Eleven stores owned by Stephens are operated independently of one another. *See id.* at 5. Further, Defendants request that the Court limit notice to a three-year period based upon the lack of viable federal claims extending beyond this time frame, *see id.* at 11, and they seek to prevent notice from being posted at any of Stephens' stores, as all current employees would be covered by notice served by mail. *See id.* at 12. Finally, Defendants dispute the form of and deadlines related to the notice and any tolling of the statute of limitations as Plaintiffs have failed to plead any extraordinary circumstances warranting such relief. *See id.* at 13-15.

### C. Plaintiffs' Motions to Strike

Plaintiffs subsequently filed a motion to strike the affidavits that were submitted with Defendants' opposition to the Motion for Conditional Certification and other affidavits submitted in opposition to a separate subsequent motion to compel (collectively, the "Affidavits"). *See* DE [25-1, 28].[2] Plaintiffs argue that the affidavits should be stricken due to the bad faith and the coercive manner in which they were obtained. *See* Pl. Strike Mot. 1. Secondarily, Plaintiffs move for the Affidavits to be precluded for a failure to disclose the identities of the individual witnesses in Defendants' initial disclosures and responses to interrogatories pursuant to Federal Rule of Civil Procedure 26 ("Rule 26"). *See id.* at 2-3.

---

[2] The motion to compel was granted in part and denied in part at a motion hearing held before this Court on May 15, 2017. *See* DE [36].

Defendants oppose the motion to strike arguing that there was no prohibition on pre-certification communications with potential opt-ins and that Plaintiffs had failed to show that Defendants had committed any bad faith acts or coercion as would justify an order being imposed by the Court. *See* Def. Strike Opp. 1 at 1-2. Additionally, there was no violation of Rule 26 and no possibility of prejudice as Defendants learned of the affiant's identities through Plaintiffs' conditional certification motion, and, in any event, discovery is still open and ongoing, so there is no prejudice. *See id.* at 2-3.

After the Court ordered an evidentiary hearing on the issue of possible bad faith conduct in Defendants' dealings with potential opt-in plaintiffs, Defendants submitted a series of twenty nine declarations from employees that they obtained through their counsel wherein the declarants stated that they were aware of the pending litigation and the underlying allegations, that Defendants fairly compensated them for all hours that they worked, and that they had no interest in pursuing the matter by opting in to the collective action (collectively, the "Declarations"). *See* DE [35-1-29]. In response, Plaintiffs also submitted an additional affidavit of a former employee in support of their motion. *See* DE [31].

After the hearing was concluded, both sides submitted additional legal argument regarding the motion to strike. *See* Plaintiffs' Reply in Support ("Pl. Strike Mot. 2"), DE [42]; Defendants' Response ("Def. Strike Opp. 2"). In their reply, Plaintiffs broaden their motion to strike to include striking and/or precluding all of

the Declarations on fundamentally the same bases as their initial motion, and Defendants again opposed.  *See* Pl. Strike Mot. 2; Def. Strike Opp. 2.

## II.   LEGAL STANDARD FOR CERTIFICATION

The FLSA provides a private right of action to recover unpaid overtime compensation and/or minimum wages.  *See* 29 U.S.C. §§ 206, 207, 216(b); *Bifulco v. Mortg. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009).  An action pursuant to section 216(b) may be brought as a collective action, that is, by "one or more employees for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  "Although the FLSA does not contain a class certification requirement, such orders are often referred to in terms of 'certifying a class.'"  *Bifulco*, 262 F.R.D. at 212 (internal quotation and citations omitted).  Courts in the Second Circuit use a two-step approach to determine whether an FLSA collective action should be certified.  *See Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010).  For the first step, also known as conditional certification, the court determines whether the proposed opt-in members are similarly situated to the named plaintiffs "with respect to whether a[n] FLSA violation has occurred."  *Myers*, 624 F.3d at 555.  If the plaintiffs meet this burden, the court conditionally certifies the class as a collective action, and potential members are notified and provided with the opportunity to opt-in.

"At the second step, after discovery, the court will determine whether the plaintiffs who opted-in are indeed similarly situated to the named plaintiff[s]; if they are not, the collective action may be decertified."  *Bijoux v. Amerigroup New York,*

*LLC*, 14-CV-3891, 2015 WL 5444944, at *2 (E.D.N.Y. Sept.15, 2015); *see also Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp. 2d 334, 336 n. 1 (W.D.N.Y. 2008) (if discovery does not support the finding that plaintiffs are similarly situated, "the court will decertify the class, the claims of the opt-in plaintiffs will be dismissed without prejudice, and the class representatives may proceed to trial on their individual claims"). The current motion before the Court concerns only the first step – whether the proposed class members are similarly situated such that conditional certification should be granted.

"Because certification at this first early stage is preliminary and subject to reevaluation, the burden for demonstrating that potential plaintiffs are similarly situated is very low." *Romero v. H.B. Auto. Grp., Inc.*, 11 Civ. 386, 2012 WL 1514810, at *9 (S.D.N.Y. May 1, 2012) (internal quotation marks and citation omitted). "This low burden is consistent with the broad remedial purpose of the FLSA." *Pippins v. KPMG LLP*, 11 Civ. 0377, 2012 WL 19379, at *6 (S.D.N.Y. Jan. 3 2012) (internal quotation and citation omitted). At this stage, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Rosario v. Valentine Ave. Discount Store, Co.*, 828 F. Supp. 2d 508, 514 (E.D.N.Y. 2011) (quoting *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)).

To succeed, Plaintiffs "need only make 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d

369, 372 (E.D.N.Y. 2008) (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). The Court does not require proof of an actual FLSA violation, "but rather that a 'factual nexus' exists between the plaintiff's situation and the situation of other potential plaintiffs." *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007) (citing *Wraga v. Marble Lite, Inc.*, 05–CV–5038, 2006 WL 2443554, at *1 (E.D.N.Y. Aug. 22, 2006)). All prospective class members need not have the same duties to be similarly situated; rather, the question is whether "they were all similarly situated *with respect to being subject to the same policy* of being denied overtime compensation." *Cano v. Four M Food Corp.*, 08–CV–3005, 2009 WL 5710143, at *7 (E.D.N.Y. Feb.3, 2009) (emphasis in original). The determination that the potential opt-in plaintiffs are similarly situated may be based on the pleadings as well as supporting affidavits or declarations submitted by Plaintiffs. *See Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 452 (E.D.N.Y. 2014); *Sexton v. Franklin First Fin., Ltd.*, 08-CV-4950, 2009 WL 1706535, at *3 (E.D.N.Y. Jun. 16, 2009).

## III.   DISCUSSION ON MOTION TO CERTIFY

### A. <u>Conditional Certification</u>

The Court grants Plaintiffs' motion for conditional certification with respect to all of Defendants' 7-11 stores. Plaintiffs have substantiated through their pleadings and affidavits the requisite factual nexus between the named Plaintiffs' claims – Defendants failing to make minimum wage and overtime payments as required under FLSA and NYLL – and the potential claims of similarly situated employees.

Conditional certification is regularly granted based upon a complaint and one or two affidavits that collectively demonstrate the requisite nexus.  *See, e.g., Juarez v. 449 Restaurant, Inc.*, 29 F. Supp. 3d 363, 369 (S.D.N.Y 2014) ("In assessing the adequacy of a plaintiff's showing, district courts look to pleadings, affidavits, and declarations, but often authorize notice based solely on the personal observations of one plaintiff's affidavit.") (internal citation and quotation marks omitted); *Doucoure*, 554 F. Supp. 2d at 374 (finding that plaintiff's "well-pleaded allegations," and nothing more, were sufficient to justify mailing notice to potential collective action members). Further, the Court notes that there is no minimal number of employees required to opt-in before conditional certification of an FLSA action as a collective is appropriate. *See, e.g., Enriquez v. Cherry Hill Market Corp.*, 10-CV-5616, 2012 WL 440691, at *2 (E.D.N.Y. Feb. 10, 2010) (citing *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y. 2009)) (granting conditionally certification with only one opt-in plaintiff submitting an affidavit); *Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 634 (S.D.N.Y. 2007) ("The single named Plaintiff here has met his burden by successfully demonstrating that there are other workers who are similarly situated to him, and that is enough for this matter to move forward."); *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263 (E.D.N.Y. 2005) (finding conditional class certification with no affidavits from opt-ins); *Zhao v. Benihana, Inc.,* 2001 WL 845000, at *2-3 (S.D.N.Y. May 7, 2001) (finding one affidavit based on plaintiff's "best knowledge" enough to grant certification).  Instead of waiting for a critical mass of opt-ins, "courts regularly grant motions for approval of a collective action notice based upon employee affidavits

setting forth a defendant's plan or scheme to not pay overtime compensation and identifying by name similarly situated employees." *Sobczak*, 540 F. Supp. 2d at 362 (citation and internal quotation marks omitted); *see also Cano,* 2009 WL 5710143, at *6 (finding that plaintiffs' affidavits containing "statements setting forth defendants' common denial of overtime pay, the named plaintiffs' personal knowledge of and the names of other coworkers who were allegedly subject to the same denial of overtime pay" demonstrated a "sufficient factual basis" that the named plaintiffs and the potential plaintiffs were similarly situated); *Wraga*, 2006 WL 2443554, at *2 (granting motion to certify collective action based on plaintiff's affidavit alleging failure to pay overtime based on personal conversations establishing that at least eighteen other employees were similarly situated).

Cabrera declares that she and other non-managerial employees, several of which are identified by name, had similar duties, were subject to the same pay practices, and were also compensated at a rate below the minimum wage and in violation of the overtime requirements with respect to all the hours that they worked per week. *See* Cabera Decl. ¶¶ 6-11. Additionally, the affidavit of opt-in Plaintiff Sinchi corroborates Cabrera's allegations of the same or similar unlawful practices taking place at the Montauk Store. *See* Sinchi Decl. ¶¶ 4-9. Further, the additional sworn declaration from Anwar, a former employee of Defendants, on its face confirms the allegation that the Defendants' wage violations extended beyond the Montauk Store to Defendants' other locations as part of a common scheme to regulate the pay practices of the stores to promote a certain cost-to-sales ratio. *See* Anwar Decl. ¶¶ 8-

10.  Conditional certification is thus appropriate not only with respect to the Montauk Store but also Defendants' other locations.  *See Lamb v. Singh Hospitality Grp., Inc.*, 2013 WL 5502844, at *4 (E.D.N.Y. Sept. 30, 2013) (adopting report and recommendation conditionally certifying class of workers at all of defendants' locations where there was an undisputed allegation of a common payment system and declarations alleged that the named plaintiffs "spoke to coworkers who had worked at … other restaurants and that they complained of policies applied to employees at Defendants' other restaurants as well"); *Agudelo v. E & D LLC,* 2012 WL 5426420, at *1, 4 (S.D.N.Y. Nov. 5, 2012) (conditionally certifying the FLSA collective premised on common control and common pay policies);  *Garcia v. Pancho Villa's of Huntington Village,* Inc., 678 F. Supp. 2d 89, 94-95 (E.D.N.Y. 2010) (conditionally certifying collective at all three restaurant locations based upon payroll for all three restaurants being processed at one location and testimony that there was common ownership of all implicated locations).

Defendants counter that Plaintiffs fail to provide sufficient evidence to establish a "common policy of failure to pay overtime." Def. Cert. Opp. at 9.  However, as explained above, the particularized showing that Defendants seek is not required under the FLSA for first stage, conditional certification and notice.  Instead, Cabrera through her declaration and the declarations of Sinchi and Anwar set forth the requisite nexus between Plaintiffs' allegations of improper compensation and the Defendants' policy of limiting all of their 7-Eleven's employees' wages in an effort to keep salaries proportional to Defendants' overall weekly sales.  *See* Pl. Cert. Mot. at

12; Anwar Decl. ¶¶ 7-10 ("Defendants would not pay their employees either minimum or overtime wages whenever a store's total payroll costs exceeded a certain percentage of that store's sales.").  Defendants cite to several inapposite cases where the employee plaintiff failed to put forth any specific factual basis for the nexus beyond "anecdotal hearsay" or the conclusory allegation of the plaintiff that they "know that [other employees] were not paid for all hours."  *See* Def. Cert. Opp. at 11.  However, here Plaintiffs present more than mere anecdotal hearsay, as Anwar's declaration lays out the alleged methods and goals of a scheme to deprive employees of their earned wages including Khan's statement made directly to Anwar, which would be admissible as a party admission.  *Compare* Anwar Decl. ¶¶ 7-9 *with* Fed. R. Evid. 801.

Accordingly, the Court concludes that conditional certification is appropriate as Plaintiffs have satisfied their minimal burden and established a factual nexus supporting the contention that individual Plaintiffs and the putative collective members are similarly situated.  *See Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 322 (S.D.N.Y. 2007) (finding conditional class certification appropriate "where all putative class members are employees of the same restaurant enterprise").

### B. <u>Scope of Conditional Class</u>

Anticipating the Court's determination in favor of Plaintiffs on the issue of conditional class certification, Defendants argue that the class should be limited to include only those employees at the Montauk Store where Cabrera, Anwar, and Sinchi worked.  Def. Cert. Opp. at 14.   The Court disagrees.   In support of their

position, Defendants rely on their competing factual evidence to defeat Plaintiffs' proffer of a factual nexus by asserting that Khan only supervised Montauk Store employees and could only have manipulated the pay of employees at that location. *See* Def. Cert. Opp. at 6-7. The Court notes that Defendants do not deny Plaintiffs' reasonable assertions that all of Defendants' 7-Eleven locations utilize the same timekeeping and payroll systems to pay the same types and classes of employees. *See* Def. Cert. Opp. Khan's testimony, in fact, arguably confirms these facets of Plaintiffs' proposed nexus discussing employees at the other locations and a common policy of sending payroll information to 7-Eleven's headquarters. *See* Khan Decl. ¶¶ 10-18. The Court agrees with Plaintiffs that it is not dispositive that Cabrera herself does not identify by name putative class members at Defendants' other locations. *See Lamb v. Singh Hospitality Grp., Inc.*, 2013 WL 5502844, at *4 (E.D.N.Y. Sept. 30, 2013) (finding class certification premised upon "some interrelation of operations and alleg[ation of] some common management"). Here, Plaintiffs identify common store ownership through Stephens and common pay practices dictated by a central corporate reporting requirement which together warrant expanding the class to the similarly situated employees at the other 7-Eleven locations. Additionally, as already stated, Plaintiffs have submitted evidence in the form of Anwar's declaration that Khan, a manager, was aware of Defendants' percentage-of-sales pay policy applying to all employees at all of Stephens' stores. *See* Anwar Decl. ¶¶ 6-8. Accordingly, the Court concludes that the class shall include all employees at all of Defendants' locations.

## C. **Time Frame for Conditional Certification**

Next, Defendants argue that, should the Court grant Plaintiffs' motion for conditional certification, the applicable timeframe for the notice should extend back only three years from the date Plaintiffs filed Cabrera's Complaint, as opposed to the six years Plaintiffs seek. *See* Def. Cert. Opp. at 16. The FLSA has a two-year statute of limitations except in the case of willful violations, for which the statute of limitations is three years. *See* 29 U.S.C. § 255(a). "At the conditional certification stage, allegations of willful conduct are sufficient to apply the three-year statute of limitations for purposes of certifying the class." *Jie Zhang v. Wen Mei, Inc.*, 14-CV-1647, 2015 WL 6442545, at *5 (E.D.N.Y. Oct. 23, 2015) (citing *Summa*, 715 F. Supp. 2d at 388; *Francis v. A & E Stores, Inc.*, 06-CV-1638, 2008 WL 2588851, at *3 (S.D.N.Y. June 26, 2008)) (noting that at the preliminary stage, "plaintiff's allegations of willful conduct ... are sufficient to support defining the class based upon the three-year statute of limitations"), *adopted as modified*, 2008 WL 4619858 (S.D.N.Y. Oct. 16, 2008)); *see Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 268 n. 2 (E.D.N.Y. 2005) (finding allegation of willful violation justified notice based on a three-year statute of limitations period); *see also Alvarez v. IBM Restaurants, Inc.,* 839 F. Supp. 2d 580, 587-88 (E.D.N.Y. 2012) ("The Plaintiffs have alleged willfulness in their Complaint ... and the Defendants deny these allegations. Courts in this circuit have generally held that where willfulness is in dispute, a three-year statute of limitations applies at the conditional certification stage."). Accordingly, as the Complaint contains allegations of willful conduct by Defendants, *See* Compl. ¶ 1, the Court finds it

appropriate to apply the three-year statute of limitations under the FLSA at this stage of the proceedings.

Plaintiffs, nevertheless, urge the Court to apply the six-year statute of limitations set forth in the NYLL, *see* N.Y.L.L. §§ 663(1), (3)*,* for the Notice and Consent Form premised upon the supplemental jurisdiction the Court presently exercises over Cabrera's state law claims.  Although some courts of this Circuit have approved six-year notice periods citing judicial economy, the confusion this causes in notifying plaintiffs who potentially have two separate claims with different statutes of limitations, along with the inefficiency of providing notice to plaintiffs whose claims may well be time-barred, weighs against granting such an extension of the notice coverage period for collective certification of an FLSA opt-in class to include the period allowed under NYLL.  *Trinidad v. Pret A Manger (USA) Ltd.,* 962 F. Supp. 2d 545, 563-64, (S.D.N.Y. 2013) (citing *Lujan v. Cabana Management, Inc.*, 10-CV-755, 2011 WL 317984, at *9 (E.D.N.Y. 2011)) ("Authorizing notice for a time period twice the length of the maximum FLSA limitations period would not serve the efficiency goal.").  Accordingly, the Court orders that the timeframe for notification be based on the three-year period applicable to Plaintiffs' FLSA claims.

With respect to the calculation of the three-year limitations period, Plaintiffs move the Court to toll the statute of limitations through and including the deadline for prospective plaintiffs to opt in, from the filing of the Complaint through the Court's decision on the Motion for Certification.  Defendants oppose any tolling, citing a lack of any extraordinary circumstances that would justify an equitable remedy.

*See* Def. Cert. Opp. at 14.   The Court grants in part and denies in part Plaintiffs' application.   Unlike Rule 23 class actions, in an FLSA collective action, the limitations period continues to run for each plaintiff until he or she files written consent with the court to join the lawsuit.  *See* 29 U.S.C. § 256(b).  Therefore, a district court may toll the limitations period to avoid inequitable circumstances, "giving due consideration to whether the plaintiffs have acted with reasonable diligence in pursuing their claims and whether the circumstances are extraordinary enough to warrant equitable relief."  *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014) (citing *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)).   The delay required to decide a conditional certification motion in an FLSA collective action has itself been accepted as an extraordinary circumstance warranting tolling.  *See, e.g., Yahraes v. Rest. Assocs. Events Corp.,* 10 CV 935, 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011) (finding equitable tolling appropriate as of the dates of service and refiling of conditional certification motion); *Jackson*, 298 F.R.D. at 170-71 (equitable tolling as of date of filing of conditional certification motion which took seven months to decide); *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) (applying equitable tolling as of date of filing of conditional certification motion which took four months to decide and declining to do so from the filing of the complaint as plaintiffs requested).   Plaintiffs moved for conditional certification within months after filing the Complaint in accordance with the scheduling order that was jointly proposed by the parties and adopted by the Court.  *See* DE [17-19].  Absent tolling of the limitations period, a

substantial number of class members may now be time-barred through no fault of counsel or the class representative.  "While plaintiffs wishing to pursue their rights cannot sit on them indefinitely, those whose putative class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delay in rulings." *McGlone*, 867 F. Supp. 2d at 445.  Accordingly, the Court tolls the statute of limitations period for the time period from the filing of the motion through to the entry of this Court's order granting conditional certification – a total of 220 days.

### D. <u>Proposed Notice</u>

Plaintiffs also move for an Order authorizing dissemination of the Proposed Notice and Consent to Join.  *See* DE [22-7]; Pl. Cert. Mot. at 13.  Neither the FLSA, nor other courts, have specifically outlined what form a court-authorized notice should take or what provisions the notice should contain.  *Moore*, 276 F.R.D. at 58 (quoting *Fasanelli*, 516 F. Supp. 2d at 323).  However, it is well-established that "[c]ourts have broad discretion to craft appropriate notices that effectuate the overarching policies of the collective suit provisions and provide employees with accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hernandez v. Immortal Rise, Inc.*, 11-cv-4360, 2012 WL 4369746, at *6 (E.D.N.Y. Sept.24, 2012) (internal quotation omitted).

Defendants' only substantive objection to the form of the notice is demanding that their counsel's contact information be included along with that of Plaintiffs'

counsel.  *See* Def. Cert. Mot. at 14-15.  A defense counsel's contact information is not required to render a form notice fair, however, and is likely to create confusion rendering distribution or collection of consent forms less effective.  *See Chhab v. Darden Restaurants, Inc.*, 11 CIV. 8345, 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013) ("Only plaintiffs' counsel can potentially represent the individuals to whom the notice is mailed, and only they should be privy to certain sensitive information that may otherwise fall within the attorney-client privilege.").  Accordingly, Defendants' application is denied.

Defendants also request a meet and confer regarding the notice yet fail to articulate any other issues or objections to its form or contents.  The Court has otherwise reviewed the Proposed Notice.  Upon its review, the Court considers it sufficient and appropriate to provide accurate and timely notice of the pendency of this action once the employment time frame for potential opt-in plaintiffs is adjusted from six to three years with that statute of limitations period tolled for the pendency of this motion.  Accordingly, Defendants application for a meet and confer is denied and, within sixty days of this order, Defendants are to provide Plaintiffs' counsel with all relevant contact information regarding potential opt-in plaintiffs.

### E.  **Posting of Notice**

Next, Plaintiffs request that the Court order Defendants to post a notice of lawsuit, along with consent forms, in conspicuous locations in each of Defendants' 7-Eleven stores so as to better provide effective notice to prospective opt-in plaintiffs. Defendants object on the grounds that such a posting is redundant and unnecessary

in light of the fact that Plaintiffs will have contact information for current employees and may contact them through mail and other means.   "'Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail.'" *Rosario v. Valentine Ave. Discount Store, Co., Inc.*, 828 F. Supp. 2d 508, 521 (E.D.N.Y. 2011) (quoting *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011)).   Defendants do not proffer an explanation as to how such a posting would be overly burdensome or present an undue hardship in this case in contrast to other cases where it has been consistently ordered.   Accordingly, Plaintiffs' request is granted; Defendants will post the notice at each of their locations in an area where covered employees are likely to view it.

### F.  Plaintiffs' Other Notice-Related Requests

Plaintiffs also seek leave to distribute notices and reminder notices in English and Spanish and to utilize electronic means in addition to first class mail, including text messaging and email.  *See* Pl. Cert. Mot. at 2.  Practical requests such as these reasonably further the purpose of notice of a collective action under the FLSA.  *See Martin v. Sprint/united Mgmt. Co.,* 15-CV-5237, 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016) (citing *Bhumithanarn v. 22 Noodle Mkt. Corp.*, 14 Civ. 2625, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015)) (allowing distribution via text message and email over defendant's objection where "the nature of the employer's business facilitated a high turnover rate among employees"); *Chhab*, 2013 WL 5308004, at *16. (S.D.N.Y. Sept. 20, 2013) (authorizing reminder notice over defendant's objection);

*Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 76, (E.D.N.Y. 2016) ("Generally, courts permit notice to be "translated into the mother tongue of non-English speaking groups of potential plaintiffs."); *Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 118 (S.D.N.Y. 2015) (citing *Jackson*, 298 F.R.D. at 169-70) (identifying delivery by mail, e-mail and posting by employer in conspicuous place where putative plaintiffs are employed as methods of delivery common in wage and hour actions)). Defendants have offered no opposition to these requests and multiple potential opt-in plaintiffs are no longer employed with Defendants.  *See* Cabrera Decl. ¶ 1, Anwar Decl. ¶ 4, Sinchi Decl. ¶¶ 1-7.  Accordingly, the Court grants Plaintiffs' applications, and Defendants are to produce last known phone numbers, email addresses, and mailing addresses as to all covered current and former employees.

## IV.   MOTIONS TO STRIKE

### A.  Mootness

Plaintiffs' motions to strike the Affidavits and Declarations are denied in their entirety because they are moot.  The Court did not rely on them in determining Plaintiffs' motion seeking conditional certification as an FLSA collective action, because they do not bear on whether Plaintiffs have made the "modest factual showing" required at this stage of the litigation.  *See Amador v. Morgan Stanley,* 11-CV-4326, 2013 WL 494020, at *3, 8 (E.D.N.Y. Feb. 7, 2013).  Indeed, at this first procedural step, as "a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated," courts in this Circuit have found that competing declarations should not be considered.  *See id.*

("[S]tatements gathered by an employer from its current employees are of limited evidentiary value in the FLSA context because of the potential for coercion. In any event, Plaintiffs have not had an opportunity to depose these declarants, and courts in this Circuit regularly conclude that such declarations do not undermine the plaintiffs' showing in the first stage of the conditional certification process.") (citation and internal quotation marks omitted); *Hernandez v. Merrill Lynch & Co.,* 11 Civ. 8472, 2012 WL 1193836, at *5 (S.D.N.Y. Apr. 6, 2012) ("[W]eighing the affidavits submitted by employees on both sides of the action – *i.e.*, affidavits from the named plaintiffs as well as affidavits from employees submitted on defendants' behalf – would require the Court to determine the facts, determine the credibility of the affiants, and resolve legal contentions, all of which the conditional certification and potential later decertification process is structure[d] so as to avoid.") (citation and internal quotation marks and omitted). Accordingly, the Affidavits and Declarations have not been considered in deciding Plaintiffs' motion for conditional certification. *See Valerio v. RNC Industries, LLC,* 314 F.R.D. 61, 61 (E.D.N.Y. 2016) ("It is not appropriate at the conditional certification stage of FLSA collective action for the court to judge the merits of plaintiffs' claims because they are irrelevant to the collective action inquiry, so long as plaintiffs assert a plausible basis for their claim.") (citing 29 U.S.C.A. § 216(b)); *Cohen v. Gerson Lehrman Group, Inc.,* 686 F. Supp. 2d 317, 329 (E.D.N.Y. 2010) ("[I]t would be inappropriate to rely on defendants' affidavits at an early stage of litigation, prior to the affiants' availability for deposition.").

As the Court has not relied on the Affidavits in arriving at its determination that conditional certification is appropriate at this time, striking the Affidavits is unnecessary.  *See Callari v. Blackman Plumbing Supply, Inc.*, 988 F. Supp. 2d 261, 293 (E.D.N.Y. 2013) (finding motion to strike moot when the court did not consider the declaration and found that it would not have impacted the court's determination regardless) (citing *Fraser v. Fiduciary Trust Co. Int'l,* 04 CIV. 6958, 2009 WL 2601389, at *1 n. 2 (S.D.N.Y. Aug. 25, 2009) *aff'd,* 396 F. App'x 734 (2d Cir. 2010) ("The Court need not strike or otherwise disregard the declarations submitted by Plaintiff and his counsel in order to reach this conclusion.  Consequently, Defendants' motion to strike all or part of these declarations is moot."); *Loughman v. Unum Provident Corp.,* 536 F. Supp. 2d 371, 379 (S.D.N.Y. 2008) ("[W]e need not address plaintiffs' motions to strike the Affidavits of [] and the Declaration [], which were offered to support [the] proposed interpretation of the Policies.  The subject Affidavits and Declaration, which address the negotiation and pricing of the Policies, were not relied upon by the Court, which has based its determination solely on the plain language of the Policies.").  Further, as a result of the Court finding the Motion to Strike the Affidavits moot, the motion to strike the Declarations is also moot, as Defendants submitted the Declarations in support of Defendants' initial opposition to Plaintiffs' motion to strike the Affidavits.  *See* DE [35] at 1.  Accordingly, Plaintiffs' motions to strike the Affidavits and Declarations are denied in their entirety as moot.

B. **No Evidence of Actual Coercion, Misrepresentations, or Bad Faith**

Even were the Court to consider Plaintiffs' motions to strike on the merits, they would be denied as, even after an evidentiary hearing, Plaintiffs have failed to put forth any evidence of actual coercion, misrepresentation, or other bad faith acts by Defendants as would justify the Court's intervention.  Although district courts do retain the inherent power to regulate and restrict communications to prevent manifest injustices and to preserve the integrity of their proceedings, the courts "may not exercise th[ose] power[s] without a specific record showing … the particular abuses by which [the moving party] is threatened." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 101, 101 S. Ct. 2193, 2200 (1981). "As a general matter, employers are free to communicate with unrepresented prospective class members about the lawsuit and even to solicit affidavits from them concerning the subject matter of the suit." *Longcrier v. HL-A Co.,* 595 F. Supp. 2d 1218, 1226 (S.D. Ala. 2008) (noting that such powers "must be used sparingly because of the substantial First Amendment considerations triggered by any such restraints.") (citing *Gulf Oil Co.,* 452 U.S. at 102, 101 S. Ct. at 2201).  Accordingly, any order restricting such communications "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil Co.,* 452 U.S. at 101, 101 S. Ct. at 2200.  "[T]he mere possibility of abuses does not justify the routine adoption of a communications ban…." *Id.* at 104, 101 S. Ct. at 2202; *see Christensen v. Kiewit–Murdock Inv. Corp.,* 815 F.2d 206, 213 (2d Cir. 1987), *cert denied* 484 U.S. 908, 108 S. Ct. 250 (1987) (no impropriety in defendants'

negotiation of settlements with potential members of a class); *Brown v. Mustang Sally's Spirits & Grill, Inc.,* 12-CV-529S, 2012 WL 4764585, at *2 (W.D.N.Y. Oct. 5, 2012) ("District courts thus must not interfere with any party's ability to communicate freely with putative class members, unless there is a specific reason to believe that such interference is necessary.") (internal citation and quotation omitted).

On this question of whether Defendants committed any acts of bad faith that may have misrepresented the present litigation or coerced potential witnesses and opt-in plaintiffs, the Court held a three-day evidentiary hearing. *See* DE [38-40]. All of the employee-witnesses called testified credibly that they were not coerced or misinformed by Defendants in any way. Concerning the Affidavits, the affiants met with Kahn in his office, understood that Plaintiffs were suing Defendants, were read the Affidavits, were aware of Plaintiffs' basic claims, and understood that by signing the affidavits they were also affirming that Defendants had not undercompensated them. *See, e.g.,* Hearing Transcript ("Tr.") 29:21-24, 34:3-38:25, 68:24-70:12, 72:4-73:20, 77:2-10, 78:6-10, 102:13-16, 118:1-7, 130:1-132:12, 151:25-159:23, 231:24-237:18, 250:1-259:17. Regarding the obtaining of the Declarations, the testimony elicited from the employees supported the conclusion that Defendants' counsel identified himself, met with the declarants in a back office at the Montauk Store in small groups without Khan or Stephens present, and explained the nature of the pending claims and the contents and implications of the Declarations. *See, e.g.,* Tr. 20:1-21:25,58:1-62:25, 160:7-23, 162:10-167:23, 180:16-20, 181:3-188:25, 200:12-

201:1.  The employees were given an opportunity to review the Declarations before choosing whether to sign them and told not to sign the statements if they did not agree with the truthfulness of their contents.  *See, e.g., id.*  The Declarations themselves also fairly and accurately summarized Plaintiffs' present claims and the employees' rights regarding the present lawsuit.  *See* Declarations.  There was no testimony or evidence presented at the hearing of acts of coercion, misrepresentations, or retaliation on the part of Defendants.

In urging the Court to grant their motion to strike, nonetheless, Plaintiffs rely on what they themselves characterize as the "*potentially* coercive environment" that Defendants and their counsel meeting with putative class members necessarily entails.  *See* Pl. Strike Mot. at 5-6 (emphasis added).  However, Plaintiffs cite only to a "risk" that misinformation was given or coercion took place at these meetings rather than any particularized acts of bad faith by Defendants.  *See id.*  Concerning the Affidavits, Plaintiffs emphasize that Khan met with most of affiants while he was still their supervisor and that Khan did not affirmatively disclose that the Affidavits were being obtained for litigation purposes. *See id.* at 5.  *Id.*  One affiant, Donovan Scott claims that he signed his affidavit without reading it, and another, John Guanga testified that Khan said to him that Khan believed Cabrera's allegations were false.  *Id.*  Plaintiffs also point to the fact that Khan accompanied the affiants to the notary and that prior to their signing Defendants did not provide documentation regarding employees past pay or explain their control over the payroll system.  *Id.*

With the respect to the Declarations, Plaintiffs argue that they must also be stricken primarily due to the same employer-employee relationship that surrounds them. *Id.* at 6. Plaintiffs emphasize that the employees met individually with Defendants' counsel in a back room, that some of the meetings were brief, and that none of the declarants were given copies of the Complaint or other documentation related to their pay. *See id.* Plaintiffs also cite to the fact that Defendants' counsel did not explain the legal distinctions between an FLSA collective action and a Rule 23 class action. *See id.*

Even assuming all of the facts and evidence put forth by Plaintiffs to be true, it substantiates only a potentiality that cannot, as a matter of law, justify sanctions or Court regulation of Defendants' interactions with unrepresented putative class members. Although defendant employers must be honest and fair, they are not required to be wholly neutral in their dealings with potential class members in an FLSA collective action. *Compare Wright v. Adventures Rolling Cross Country, Inc.*, C-12-0982, 2012 WL 2239797, at *5 (N.D. Cal. June 15, 2012) (finding Rule 32 order warranted when communications by Defendants included emphasis that joining class would subject opt-in plaintiffs to "searing scrutiny" and baseless derogatory statements regarding class counsel); *Romano v. SLS Residential Inc.*, 253 F.R.D. 292, 297 (S.D.N.Y. 2008) (finding sanctions appropriate where defendants "provided class members with patently false and misleading information" including that, were they to remain in the class, their private medical and mental health histories would be publicized) *with Austen v. Catterton Partners,* 831 F. Supp. 2d 559, 565 (D. Conn.

2011) (holding *"ex parte* communications between defense counsel and putative class members – even *ex parte* settlement negotiations – are not abusive communications that warrant limitations absent indications in the record of the need for limitations."); *Kerce v. W. Telemarketing Corp.,* 575 F. Supp. 2d 1354, 1366 (S.D. Ga. 2008) (denying motion to strike where plaintiff was only able to show that communication was "unauthorized, and *possibly* coercive or misleading") (citing *Gulf Oil Co.*, 452 U.S. at 101, 101 S. Ct. at 2200) (emphasis added).  Accordingly, Plaintiffs' motion to strike is also denied on the merits.

### C. **Motion to Preclude.**

In the alternative, Plaintiffs argue that the Declarations and Affidavits should be precluded for violating the disclosure requirements of Rule 26.  The Court again disagrees.  Rule 26 provides that parties must disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."  Fed. R. Civ. P. 26(a)(1)(A)(i).  When a party does not make such disclosures in a timely manner, Federal Rule of Civil Procedure 37 ("Rule 37") provides a remedy in the form of a preclusion "unless the failure [to disclose] was substantially justified or harmless."  Fed. R. Civ. P. 37(c); *see Design Strategies, Inc. v. Davis*, 228 F.R.D. 210, 212 (S.D.N.Y. 2005).  However, the Second Circuit has deemed preclusion an "extreme sanction[,]" advising that district court judges "should inquire more fully into the actual difficulties which the violation causes, and must

consider less drastic responses." *Sprayregen v. A. Gugliotta Dev., Inc.*, 166 F. Supp. 3d 291, 295, (E.D.N.Y. 2016) (quoting *Outley v. City of N.Y.*, 837 F.2d 587, 591 (2d Cir. 1988)); *Hinton v. Patnaude*, 162 F.R.D. 435, 439 (N.D.N.Y. 1995) (noting that preclusion is a "drastic remedy" that should be considered only "in those rare cases where a party's conduct represents flagrant bad faith and callous disregard of the Federal Rules of Civil Procedure."). "'Despite the mandatory nature of Rule 37, the Second Circuit has held that preclusion is still a discretionary remedy, even if the trial court finds that there is no substantial justification and the failure to disclose is not harmless.'" *Leong v. 127 Glen Head Inc.*, CV 13-5528, 2016 WL 845325, at *3 (E.D.N.Y. Mar. 2, 2016) (quoting *Pal v. New York Univ.*, 06-CV-5892, 2008 WL 2627614, at *3 (S.D.N.Y. June 30, 2008)).

Defendants have reasonably proffered that the witnesses who signed the Affidavits and Declarations only became relevant upon reading Plaintiffs' Motion for Conditional Certification that named or effectively identified them as potential opt-ins. *See* Def. Strike Opp. 1. at 2; *compare* Pl. Cert. Mot. at 10 *with* Def. Cert. Op. Exs. A-C; Defendants' Opposition to Plaintiffs' Motion to Compel Exs. 1-8. Additionally, as these witnesses were first identified by Plaintiffs and as discovery is still open and ongoing, with no depositions of these witnesses noticed, the Court finds no prejudice as would warrant preclusion. *See Temple v. City of New York,* 06-CV-2162, 2010 WL 3824116, at *9 (E.D.N.Y. Sept. 23, 2010) (denying defendant's motion to preclude despite technical Rule 26 violation, when relevance of unnoticed plaintiff's witness only became apparent through defendant's own testimony, undercutting any

argument of prejudicial unfairness); *Blake v. City of New York*, 05 CV 6652, 2007 WL 1975570, at *5 (S.D.N.Y. July 6, 2007) (denying motion to strike and preclude where opposing party was put on notice of possible relevance of witness and had an opportunity to depose him prior to close of discovery despite arguable violation of Rule 26). Accordingly, there being no substantial prejudice to Plaintiffs even were the Court to find a violation, Defendants motion to preclude is denied.

## I.   CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part, Plaintiffs' Motion for Conditional Certification as follows:

(1) Conditionally Certifying this case as a collective action including any and all of Defendants' current and former non-managerial employees who were employed from 2/20/2014 through to the present at any of Defendants' locations;

(2) Order Defendants, within sixty days of the Court's Order, to produce a computer-readable data file containing the names, last known mailing addresses, last known home and mobile telephone numbers, last known email addresses, work locations, and dates of employment, of all potential collective action members who worked for Defendants at any point from 2/20/2014 to the present;

(3) The notice of this action, in the form submitted, will be in English and Spanish, and sent via regular mail as well as text message and e-mail;

(4) Defendants will post the Notice and Reminder Notice in English and Spanish in a place where employees are likely to view it all 7-Eleven store locations owned and/or operated by Defendants for the entire opt-in period;

(5) Plaintiffs will send the proposed reminder notice in both English and Spanish to the potential collective members thirty days after sending the initial notice, via regular mail, text message and e-mail; and

(6) The FLSA statute of limitations is tolled from the date of filing of this motion, until the date of the issuance of this order.

Additionally, Plaintiffs' motions to strike and preclude the Affidavits and Declarations are denied in their entirety.

Dated: Central Islip, New York     **SO ORDERED.**
      September 28, 2017

<u>/s/ Steven I. Locke</u>
STEVEN I. LOCKE
United States Magistrate Judge